2002 OK CIV APP 6
**Jennifer ABBOTT, now Pruitt, Plaintiff/Appellant,**

v.

**Jeffrey ABBOTT, Defendant/Appellee.**
**No. 95,109.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 4, 2001.

Z. Joseph Young, Chickasha, OK, for Plaintiff/Appellant.

Evelyn Ann Reiss, Evelyn Ann Reiss, P.C., Anadarko, OK, for Defendant/Appellee.

JOE C. TAYLOR, Judge:

¶ 1 Plaintiff, Jennifer Abbott (Mother), appeals an order of the trial court finding that she "failed to encourage" visitation with Defendant, Jeffrey Abbott (Father), by their minor daughter. The issues on appeal are (1) whether the trial court's order is clearly against the weight of the evidence, and (2) whether the trial court erred in awarding attorney fees to Father. We answer both questions in the affirmative and reverse.

¶ 2 Mother and Father were granted a divorce on September 13, 1996. Initially, Mother received sole custody of their two minor children, Amber Abbott (Daughter) and Robert Abbott (Son), and Father re-

ceived standard visitation. On September 14, 1998, the trial court modified custody and visitation, placing custody of Son with Father, leaving custody of Daughter with Mother, and setting a visitation schedule under which the children would be together every weekend and on major holidays.

¶ 3 Pursuant to *43 O.S. Supp.2000 § 111.3*, Father filed a motion to enforce visitation rights on December 28, 1999, asserting Mother had denied or otherwise interfered with his visitation rights with Daughter. Father subsequently moved for an award of attorney fees and costs incurred in presenting his motion to enforce visitation rights.[1] After two evidentiary hearings, the trial court granted Father's motion, (1) finding that Mother "has failed to encourage the minor child Amber Abbott to visit her father"; (2) ordering Father to "arrange for counseling to focus on issues between him and the child"; (3) ordering Mother "not to interfere with [Father's] visitation or with counseling between the minor child and her father"; and (4) sustaining Father's motion for attorney fees, in the amount of $1,650. Mother appeals the trial court's order.

¶ 4 Mother first argues the trial court's finding that she "failed to encourage" visitation between Father and Daughter is against the weight of the evidence. Divorce suits are of equitable cognizance, *Larman v. Larman*, 1999 OK 83, 991 P.2d 536, and, unless the decision regarding visitation is clearly against the weight of the evidence or is unjust, we will not disturb the trial court's ruling, *Pharaoh v. Pharaoh*, 1993 OK CIV APP 181, 865 P.2d 1279. Having reviewed the record on appeal, we find that the trial court's decision is clearly against the weight of the evidence and unjust.

¶ 5 Preliminarily, we must look at *43 O.S. Supp.2000 § 111.3*, the statutory authority upon which Father based his motion to enforce visitation rights. Section 111.3(A) provides, "When a noncustodial parent has been granted visitation rights and those rights are denied or otherwise interfered with by the custodial parent, ... the noncustodial parent may file with the court clerk a motion for enforcement of visitation rights." (Emphasis added.) Thus, under the clear language of § 111.3(A), the noncustodial parent must show that the custodial parent either denied or interfered with the noncustodial parent's visitation.

¶ 6 We interpret the terms of a statute according to their plain and ordinary meaning, unless contrary to the purpose and intent of the statute. *South Western Okla. Dev. Auth. v. Sullivan Engine Works, Inc.*, 1996 OK 9, 910 P.2d 1052; see also *Sicking v. Sicking*, 2000 OK CIV APP 32, 996 P.2d 471. The words "denying" or "interfering," when used according to their plain and ordinary meanings, are not equivalent to "failing to encourage." As used in § 111.3(A), "deny" means "to turn down or give a negative answer to (a person) ... [or] to refuse to grant: withhold...." Webster's Third New International Dictionary Unabridged, 603 (1986). "Interfere" means "to enter into or take a part in the concerns of others: intermeddle, interpose, intervene." Id. at 1178. "Interference" means to hamper, obstruct, or inhibit. Id. "Encourage" means "to give courage to: inspire with courage, spirit, or hope [or] to spur on...." Id. at 747. Generally, "encourage" suggests "instilling with courage, confidence, and purpose or fostering enough of these characteristics by advice, inducement, or similar influence to perform or endure as indicated...." Id. Thus, "failing to encourage" means failing to give courage to a person or failing to foster courage by advice, inducement, or influence. It is clear from these definitions, that each word—deny, interfere, and encourage—has a distinct definition. In particular, "encourage" is distinct from both "interfere" and "deny." Thus, a mere "failure to encourage" is not the equivalent of "interference" or "denial," and does not come within the meaning of § 111.3.

¶ 7 Father does not argue that Mother denied or refused to grant Father's re-

---

1. Father also requested attorney fees and costs for motions regarding child support and modification of custody. However, the issues involved in these motions are not part of this appeal. Moreover, the trial court limited its award of attorney fees to the motion to enforce visitation rights.

quest for visitation. Nor does Father really argue that Mother interfered with his right to visitation. At most, as Father's counsel put it, Mother is not taking a proactive role to insure that Father's "visitation is taking place." In other words, Father's counsel argues that Mother is not doing enough by just telling Daughter that she and her dad need to work it out. This alleged inaction by Mother cannot be viewed as denial of or interference with visitation.

¶ 8 Moreover, even if we were to accept Father's argument that "when you don't do anything to assist that visitation, ... that's interfering with visitation," we find that the weight of the evidence does not support a finding that Mother "failed to encourage visitation," much less a finding that she denied or interfered with it. When the testimony of Mother, Father, and Daughter, and the comments of the attorneys and the trial judge are viewed in their entirety, it is clear that the relationship between Father and Daughter is acrimonious and frustrating to all parties concerned.

¶ 9 According to Daughter, she refused to visit with Father because Father told her she had a mental illness, called her a liar, and talked negatively about Mother. Although Father denies Daughter's accusations, Daughter believed they occurred and refused to visit Father because of them. Daughter concluded that she does not like the way Father treats her.

¶ 10 As to Mother's actions with regard to visitation, Mother and Daughter both testified that Mother has told Daughter on several occasions that she needs to visit Father, and, at the very least, she needs to talk to him to work out their problems. According to Daughter, Mother does not say anything about Father and has not prevented her from seeing Father, nor has Mother told Daughter that she does not want her to see Father. Furthermore, unless Daughter contacted Father before the time that they were supposed to meet for visitation, Mother always took Daughter to meet Father for visitation. Mother testified that, when Daughter tells

her she does not want to visit Father, Mother does not tell Daughter "it's okay, don't go." Finally, Mother acknowledged that it is important that Daughter visit Father, but stated it is "also important how the father and [his new wife] handle the situation and how they take part in her life."

¶ 11 Other than believing that Mother is not doing anything to help "ensure visitation," Father gave little testimony that would support a finding that Mother failed to encourage visitation. Father testified Mother has told Daughter that "you don't have to [go] if you don't want to," and has allowed Daughter to refuse to visit. Nevertheless, when asked if he thought Mother should physically put Daughter in his vehicle to leave for visitation, Father said "[i]t shouldn't have to come to that," because Mother should "mentally" prepare Daughter for the visitation.

¶ 12 Father also acknowledged that during mediation Mother supported his visitation rights and suggested that Father and Daughter receive counseling. He further acknowledged that Mother has told Daughter she had to visit with him. Father expressed great frustration over the situation and admitted that he has mostly stopped attempting to visit with Daughter in person or on the phone because Daughter will not talk and will not go with him. He further admitted that, when Daughter calls and tells him not to bother driving to the meeting place to pick her up, there is nothing he can do that would make her visit him.[2]

¶ 13 At worst, the testimony at trial shows Mother did not force Daughter to visit Father. However, neither did Father force Daughter to visit. The trial court's finding that Mother "failed to encourage" visitation, much less that she denied or interfered with visitation, was clearly against the weight of the evidence. Therefore, we reverse the trial court's order to the extent that it finds that Mother failed to encourage visitation.

¶ 14 Mother next argues that the trial court erred in awarding attorney fees to

---

2. Even the trial court judge expressed frustration over the situation. He advised the parties that "you don't let an eleven year old child drive the train." He further noted that Daughter "sat up here and told me it didn't matter what I said."

Father. We agree. First, we note that the language of § 111.3 authorizes an award of attorney fees "[i]f the court finds that visitation rights of the noncustodial parent have been unreasonably *denied* or otherwise *interfered with* by the custodial parent." (Emphasis added.) Here, the trial court made no such finding; rather, it merely found that Mother "failed to encourage" visitation. Statutes authorizing awards of attorney fees are strictly construed, because they may have a chilling affect on access to the courts. *Beard v. Richards*, 1991 OK 117, 820 P.2d 812. Because the terms "deny," "interfere," and "failure to encourage" are distinct, and because statutes authorizing awards of attorney fees are strictly construed, we find that attorney fees are not authorized under § 111.3 upon a finding that a custodial parent failed to encourage visitation. Furthermore, because the weight of the evidence does not support a finding that Mother "failed to encourage" visitation, Father would not be entitled to attorney fees under § 111.3, even if it could be read to allow such an award upon a finding that a custodial parent failed to encourage visitation.

¶ 15 The trial court's order is reversed to the extent that it found that Mother "failed to encourage [Daughter] to visit her father" and to the extent that it awarded attorney fees to Father. The remainder of the order was not appealed and thus remains in effect.

¶ 16 REVERSED.

¶ 17 STUBBLEFIELD, P.J., and RAPP, J., concur.