2004 OK 84

**Theodore D. HEAD and Lori A. Head, husband and wife, Plaintiffs/Appellants,**

v.

**Walter Thomas McCRACKEN and Rebecca Lucille McCracken, husband and wife, Defendants/Appellees,**

and

**Joseph Lee McCracken and Jo Ellyn McCracken, husband and wife, Defendants.**

**No. 99,257.**

Supreme Court of Oklahoma.

Nov. 9, 2004.

As Corrected Dec. 2, 2004.

Philip W. Redwine, Douglas B. Cubberley and James L. Bintz of Redwine & Cubberley, Norman, Oklahoma for Plaintiffs/Appellants.

Glynis C. Edgar and Marie Johnson of Glynis C. Edgar, P. C., Norman, Oklahoma and J. David Rambo, Norman, Oklahoma for Defendants/Appellees.

LAVENDER, J.

¶ 1 The trial court granted summary judgment to defendants/appellees, Walter Thomas and Rebecca Lucille McCracken, husband and wife (hereafter defendants) in regard to plaintiffs'/appellants', Theodore D. and Lori A. Head, husband and wife (hereafter plaintiffs) claim to damages, attorney fees and costs under the Nonjudicial Marketable Title Procedures Act (NMTPA), 12 O.S.2001, § 1141.1–1141.5, particularly § 1141.5(A) thereof. Plaintiffs filed a motion for new trial as to said claim, which the trial court denied. After their new trial motion was denied, plaintiffs filed a motion for an award of damages, costs and attorney fees, which again placed reliance on § 1141.5(A). The trial court denied the motion. Plaintiffs appealed.[1] The Court of Civil Appeals (COCA), Division I, reversed and remanded for trial. Defendants sought certiorari which we granted. We hold defendants were entitled to summary judgment as a matter of law under the NMTPA. The COCA's opinion is vacated and the trial court Orders denying plaintiffs' motions for new trial and for an award of damages, costs and attorney fees are affirmed.

**PART I.   STANDARD OF REVIEW.**

¶ 2 Plaintiffs appeal from the trial court Order denying their new trial motion. The appellate review standard regarding a trial judge's denial of a new trial motion is abuse of discretion. *Evers v. FSF Overlake Associates*, 2003 OK 53, ¶ 6, 77 P.3d 581, 584.[2] As in *Evers*, however, the correctness of the trial court's new trial denial rests on

---

1. The plaintiffs' challenge to the trial court's denial of their motion for an award of damages, costs and attorney fees was added to the instant appeal via plaintiffs' amended petition in error, which was filed in this appeal on July 28, 2003.

2. An abuse of discretion in regard to a trial court's denial of a motion for new trial is found by an appellate tribunal (and, thus, reversal warranted), if it is determined the trial court erred with respect to a pure, simple and unmixed question of law [*Mooney v. Mooney*, 2003 OK 51, ¶ 50, 70 P.3d 872, 881] or has acted arbitrarily. *Dominion Bank of Middle Tennessee v. Masterson*, 1996 OK 99, 928 P.2d 291, 294.

the propriety of the earlier grant of summary judgment. Of course, the correctness of the trial court's denial of plaintiffs' motion for an award of damages, costs and attorney fees also rests on the propriety of the summary judgment grant. Thus, we must examine the correctness of the trial court's summary judgment grant to defendants on plaintiffs' § 1141.5(A) claim to damages, attorney fees and costs under the standard of review applicable to summary judgment grants. *See Evers*, 2003 OK 53, ¶ 6, 77 P.3d at 584.

¶ 3 An appellate court tests a trial court's summary judgment grant by a *de novo* review standard. *In re Estate of MacFarline*, 2000 OK 87, ¶ 3, 14 P.3d 551, 554. Although factual matters are considered in ruling on a summary judgment motion, the ultimate decision turns on the purely legal determination of whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053. An appellate court, like a trial court, scrutinizes the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact, and all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.* In such a *de novo* review the appellate court engages in a plenary, independent and non-deferential re-examination of the trial court's ruling. *Manley v. Brown*, 1999 OK 79, ¶ 22 n. 30, 989 P.2d 448, 455 n. 30.

¶ 4 In *Prudential Ins. Co. of America v. Glass*, 1998 OK 52, 959 P.2d 586, additional guidance concerning an appellate court's review of a summary judgment ruling was delineated as follows:

[A] summary judgment ruling must be made on the record actually presented by the litigants, not on a record potentially possible. If the summary judgment submissions disclose either controverted material facts, or, reasonable minds might reach different conclusions even if the material facts are undisputed, summary judg-

ment should be denied. It must be remembered, neither this Court [n]or a trial court weighs the evidence on a motion for summary judgment and it is not the purpose of such procedure to substitute a trial by affidavit for a trial according to law. Weighing of evidence is a function for the jury and, in a non-jury case, for the trial judge after an appropriate trial of the issues. Finally, only if the movant for summary adjudication satisfies the initial burden to show entitlement to summary judgment is it incumbent on the non-movant to demonstrate by his/her own submissions the existence of a substantial dispute as to some material fact.

1998 OK 52, at ¶ 3, 959 P.2d at 588–589 (citations omitted). *In re Estate of MacFarline* further succinctly provides, "[f]or a party to be entitled to summary judgment in his/her favor, the record **must** show that party entitled to judgment as a matter of law." 2000 OK 87, ¶ 4, 14 P.3d at 555 (emphasis in original).

¶ 5 We also have before us a question concerning statutory interpretation because the meaning of a legislative enactment, § 1141.5(A) of the NMTPA, is central to determining defendants' entitlement to summary judgment. As with summary judgment review, "[a] legal question involving statutory interpretation is subject to *de novo* review . . ., i.e., a non-deferential, plenary and independent review of the trial court's legal ruling." *Fulsom v. Fulsom*, 2003 OK 96, ¶ 2, 81 P.3d 652, 654, citing *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5. The above standards guide our consideration of this cause.

## PART II. FACTUAL AND PROCEDURAL BACKGROUND.

¶ 6 In July 2001 plaintiffs sued defendants to, in effect, obtain a judicial order establishing and defining an access road easement over land owned by defendants, the road being necessary to provide a passageway to a five acre landlocked parcel of land then owned by plaintiffs.[3] In essence, plaintiffs'

---

3. Plaintiffs' petition also complained, in effect, that a fence had been placed in such a manner

on the road easement that access was restricted, that the fence restricted their property from be-

initial suit was one to quiet title to an access road easement. Both parcels of land are located in Cleveland County. In 1988 defendants, out of a larger parcel owned by them, conveyed the landlocked five acre tract to their son (then single) by warranty deed, granting fee title to the tract "with an access road to Etowah road."[4] At the time of the 1988 conveyance no access road actually existed and the 1988 warranty deed did not specifically detail the width, length or location where the access road was to be built. The record shows that during his ownership of the property, defendants' son built or had built an access road traversing defendants' tract and that this road existed in 1998 when plaintiffs purchased the five acre tract from the son (then married) and his wife. The 1998 warranty deed from the son and his wife to plaintiffs did not describe or mention an access road easement.[5]

¶7 Plaintiffs' petition, and an amended petition filed in the trial court, also alleged that through their attorney, by letter dated June 9, 2001, that they, plaintiffs, made written statutory demand upon defendants to execute a document preserving the right of access to the landlocked tract, but that defendants ignored the demand. Plaintiffs asserted that because defendants ignored the demand they, plaintiffs, were entitled to recover costs of the action, including reasonable attorney fees for investigation, preparation and maintenance of the action. Although neither the petition nor amended petition cites to the NMTPA, no one disputes here that the statutory anchor behind plaintiffs' written demand is the NMTPA.

¶8 The letter from plaintiffs' attorney to defendants, in effect, sought to have defendants execute a fifty (50) foot wide access road easement across defendants' property. A legal instrument entitled "*ROAD EASE-MENT*" specifically describing the fifty (50) foot road easement accompanied the letter from plaintiffs' attorney, and the letter and the requested road easement instrument are attached to plaintiffs' trial court petition. The description of the sought-after easement contained in the instrument follows:

> The East 25.00 feet of the Northwest Quarter of the Northeast Quarter of the Northwest Quarter (NW/4 NE/4 NW/4) **AND** the East 25.00 feet of the North Half of the Southwest Quarter of the Northeast Quarter of the Northwest Quarter (N/2 SW/4 NE/4 NW/4) **AND** the West 25.00 feet of the Northeast Quarter of the Northeast Quarter of the Northwest Quarter [ (]NE/4 NE/4 NW/4) **AND** the West 25.00 feet of the North Half of the Southeast Quarter of the Northeast Quarter of the Northwest Quarter (N/2 SE/4 NE/4 NW/4) **ALL** in Section 29, T. 8 N., R. 1 E., I.M. Cleveland County, Oklahoma

(bolding in original).

¶9 In an Order filed in the trial court in November 2001, the trial judge determined that an ingress/egress road easement existed as a matter of law. The Order defined the road as being twenty (20) feet in width, ten (10) feet on either side of the midline of the existing road, i.e., the road the son built or had built. The Order also described the road easement more particularly by virtue of a survey that had been conducted, i.e., the Order specified a legal description of the existing road's location. The description as contained in the trial court Order is:

> A 20.00 feet Road Easement being 10' on either side of the centerline more particularly described as follows:
>
> Commencing at the Northeast Corner of the Northwest Quarter (NW/4) of Section 29, Township 8 North, Range 1 East, I.M.,

---

ing shown for sale and that they suffered damages because a sale of the property that was under contract was lost. We note the record discloses plaintiffs eventually sold the five acre landlocked tract, apparently in November 2001.

4. For informational purposes, we note that in the 1988 warranty deed the entire legal description of conveyed property is set forth in capital letters, including the language concerning an access road to Etowah road quoted in the text.

5. The son and his wife, Joseph Lee and Jo Ellyn McCracken, were also sued by plaintiffs in the trial court. Defendants' son and his wife, however, are not parties to this appeal. The record presented in this appeal reveals plaintiffs eventually dismissed with prejudice their claim(s) against the son and his wife, after they and plaintiffs settled out-of-court.

Cleveland County, Oklahoma, thence West a distance of 663.19 feet along the North line of said Section 29 to the Point of Beginning, thence S00 38'11"E a distance of 541.59 feet; thence S19 09'20"W a distance of 124.92 feet to termination.

¶ 10 Subsequent to the November 2001 Order, plaintiffs filed a supplemental petition, incorporating their earlier-filed petition and amended petition. In addition, the supplemental petition sought relief for breach of deed warranty and covenant, slander of title and trespass.[6] Defendants moved for summary judgment as to all claims to relief and theories of liability.[7] The trial court granted summary judgment to defendants and plaintiffs filed a motion for new trial as to their claim of entitlement to monetary recovery under § 1141.5(A) of the NMTPA, including litigation expenses and attorney fees. The motion for new trial was denied by the trial judge in April 2003. As noted previously, after the new trial motion denial, plaintiffs filed a motion for an award of damages, costs and attorney fees, again placing reliance on § 1141.5(A). The trial court denied the motion. Upon plaintiffs' appeal, in an October 2003 opinion, the Court of Civil Appeals reversed and remanded for trial. Defendants

sought certiorari, which we previously granted. The parties were allowed to file briefs subsequent to our certiorari grant, the final brief filed in March 2004.[8]

## PART III. ANALYSIS.

¶ 11 "An easement is the right of one person to go onto the land of another and make a limited use thereof." *Story v. Hefner*, 1975 OK 115, 540 P.2d 562, 566. "Easements may be expressly created by deed, or by necessity, or prescriptive use, or implied in a deed." *Mooney v. Mooney*, 2003 OK 51, ¶ 17, 70 P.3d 872, 876.[9] An easement is a right to do something on another's land, coupled with an interest or estate in the land affected. *See Haas v. Brannon*, 1924 OK 500, 225 P. 931, 932 *Fourth Syllabus by the Court* and 936.[10] As applicable here, the passageway or roadway crossing defendants' land is the easement whereby the landlocked parcel initially conveyed by defendants to their son may be accessed.

¶ 12 The perpetual right of ingress and egress upon land of an adjoining landowner expressly granted by a warranty deed is an easement. *Lindhorst v. Wright*, 1980 OK CIV APP 42, 616 P.2d 450, 452–453.[11] For purposes of the issue or question

6. An amended supplemental petition was also filed by plaintiffs in June 2002. It re-urged the quiet title, breach of deed warranty and covenant, slander of title and trespass claims earlier made. It added a fifth claim against defendants' son and his wife for breach of contract.

7. Among other materials, the June 9, 2001 letter from plaintiffs' attorney to defendants, along with the fifty (50) foot *"ROAD EASEMENT"*, were attached to defendants' motion for summary judgment and brief in support, said motion filed in the trial court in December 2002.

8. The plaintiffs' contentions of error on appeal relate only to the propriety of the trial court's rulings relating to the recovery of damages, attorney fees and costs under the Nonjudicial Marketable Title Procedures Act (NMTPA), 12 O.S. 2001, §§ 1141.1–1141.5, particularly § 1141.5(A) thereof. Therefore, we need not and do not decide here the correctness of the trial court's grant of summary judgment to defendants relating to plaintiffs' claims based on breach of deed warranty and covenant, slander of title or trespass.

9. In the Third Syllabus by the Court in *Thomas v. Morgan*, 1925 OK 494, 240 P. 735, *overruled on*

other grounds, *Pearson v. Hasty*, 1943 OK 179, 137 P.2d 545, the Court stated:

(a) A way of necessity is based upon the presumption of a grant, and will never exist if the two tracts of land are not shown at some time in the past to have belonged to one and the same person.
(b) If one grants a piece of land in the midst of his own, he thereby impliedly grants a way to reach it.

10. The difference between an easement and a mere license is explained in *Haas v. Brannon*, 1924 OK 500, 225 P. 931, 932 *Fourth Syllabus by the Court* and 936. The latter is an authority to do a particular act or series of acts upon another's land without possessing an estate or interest in the land itself. *Id.* An easement, as the text notes, carries with it not only the right to do some act or series of acts upon another's land, but is coupled with an estate or interest in the land affected. *Id.*

11. Where the width, length and location of an easement for ingress and egress are set forth in a granting instrument in specific and definite language, the expressed terms control; however, if said attributes are not so fixed by the terms of

confronting us in this case it is unnecessary for us to definitively determine the exact nature of the creative underpinnings of the easement involved in this matter. It is sufficient to set out that this Court has recognized that questions concerning the judicial establishment of an ingress/egress road easement under certain circumstances have been considered a proper subject of a quiet title action pursuant to 12 O.S. § 1141, the current version of which is now found at 12 O.S.2001, § 1141. *White v. Grace,* 1997 OK 143, ¶ 6, 950 P.2d 837, 839; *see also Buttrill v. Stanfield,* 1947 OK 90, 178 P.2d 889, 890 (easement is a legal property right transferable with the real estate to which it is appurtenant and will support action to quiet title).[12]

▮▮▮▮▮ ¶ 13 The provision of the NMTPA upon which plaintiffs place reliance for their claim to damages, attorney fees and costs is § 1141.5(A) which provides:

A. If a requestor prepares a notice pursuant to [§ 1141.3], and:

1. The respondent receives the notice and fails to respond, or

2. The respondent requests clarification or additional information and then subsequently refuses to execute and deliver a curative instrument or to take the corrective action identified in the notice, or

3. The respondent refuses to claim the notice, or

4. The respondent receives the notice and refuses to take the action requested in the notice, then in the event that the requestor files an action to quiet title to the subject parcel pursuant to [12 O.S. § 1141], and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice, the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the plaintiff in identifying the relevant instrument, preparing the notice to the respondent pursuant to [§ 1141.3], and the expenses of litigation directly related to obtaining judgment quieting title in the plaintiff with respect to the interest or apparent interest forming the basis of the action against the respondent, including costs and reasonable attorney fees.[13]

B. If an action is brought to quiet title alleging that the adverse claim is sham legal process, as defined by [21 O.S. § 1533], the court may award costs and reasonable attorneys fees to the prevailing party. If the plaintiff prevails in the action, the court shall order the defendant to pay the plaintiff three times the damages that the plaintiff may have sustained as a result of the sham legal process. A quiet title action pursuant to this subsection shall be independent of any criminal action that may be filed against the defendant, and there shall be no requirement that the defendant in such an action be convicted of any criminal act.

---

the granting or reservation instrument, the owner of the dominant estate (i.e., the easement holder) is ordinarily entitled to a right of way of such width, length and location as is sufficient to give necessary or reasonable ingress and egress over the other person's land (i.e., the servient estate for easement purposes). *See Aladdin Petroleum Corp. v. Gold Crown Properties, Inc.,* 221 Kan. 579, 561 P.2d 818, 822 (1977). Easements do not vest title in their possessors, but merely grant some type of limited use in another's (fee holder's) property. *Lindhorst v. Wright,* 1980 OK CIV APP 42, 616 P.2d 450, 454.

12. Title 12 O.S.2001, § 1141 provides:

A. An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or any interest therein adverse to the person bringing the action for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession. The person or persons bringing such action shall not be required to allege the particular estate or interest claimed adversely by the person or persons against whom the action is brought, but may allege that the defendants' claim is adverse to that of the plaintiffs.

13. The NMTPA, 12 O.S.2001, §§ 1141.1–1141.5, provides *in toto:*

§ 1141.1:
This act shall be known and may be cited as the "Nonjudicial Marketable Title Procedures Act".

§ 1141.2:
As used in this act:
1. "Apparent cloud" means an effect, without a judgment of a court of competent jurisdiction, which in the good faith opinion of a requestor results in a condition of title to real property located in the State of Oklahoma that fails to meet the standard of "marketable title"

as defined by the "Oklahoma Title Examination Standards" as adopted and revised by the House of Delegates of the Oklahoma Bar Association;

2. "Certified mail" means that method of transmitting items through the United States Post Office pursuant to which the addressee of the item mailed is either required to indicate an acceptance of delivery or refusal or which results in a record by the United States Post Office that the addressee was contacted regarding the item, but refused delivery or refused to claim the item;

3. "Conveyance" means an instrument, recorded in the real property records of a county of the State of Oklahoma, pursuant to which a grantor makes a transfer of an estate in real property;

4. "Corrective action" means some procedure, other than the execution and delivery of a curative instrument, identified in a notice and communicated to a respondent with the intended effect of removing a cloud or an apparent cloud on the title to real property;

5. "Curative instrument" means a conveyance or instrument identified by a requestor that the requestor in good faith believes has the effect of curing a title defect;

6. "Entity" means a person, firm, partnership, general partnership, limited partnership, corporation, limited liability company, limited liability partnership or other legally constituted entity;

7. "Estate" means a quantity or duration of ownership in real property located in the State of Oklahoma whether in fee simple absolute or some lesser quantity or duration and includes both the surface estate and mineral estate;

8. "Execute" means to subscribe an instrument or a conveyance as either a natural person acting in an individual or a representative capacity;

9. "Good faith" means having a basis in facts ascertainable to a requestor or which should be ascertainable with the exercise of reasonable diligence and the reasonable application of law to facts known or which, through the exercise of reasonable diligence, should be known to a requestor regarding the effect of an instrument upon the title to real property located in the State of Oklahoma;

10. "Instrument" means a document, executed with formalities authorized or required by law, pursuant to which either a conveyance is made or pursuant to which some aspect of the title to real property located in the State of Oklahoma is affected or may be affected;

11. "Interest" means either legal title or an equitable claim which is made in good faith;

12. "Notice" means the document described in [§ 1141.3];

13. "Parcel" means real property capable of separate description from any other real property located in the State of Oklahoma, pursuant to a description which is adequate for a conveyance pursuant to the requirements of the laws of the State of Oklahoma;

14. "Person" means a natural person acting in an individual capacity or a natural person acting in a representative capacity;

15. "Quiet title action" means a civil action filed pursuant to the authority of [12 O.S. § 1141] and in which the plaintiff requests a determination or judgment from the court regarding the title to a parcel of real property;

16. "Real property" means land and fixtures and includes the surface estate and the minerals underlying lands located in the State of Oklahoma;

17. "Refuse" means that the respondent either will not take the action specified in a notice or that the respondent will not take action which the requestor communicates as an acceptable response to the notice;

18. "Requestor" means any person or entity transmitting a notice to a respondent pursuant to [§ 1141.3] or if the requestor engages the services of an agent or fiduciary to prepare the notice, the agent or fiduciary of the requestor;

19. "Respondent" means the person or entity to whom a notice is transmitted pursuant to [§ 1141.3] or, if the respondent engages the services of an agent or fiduciary to prepare a response to a requestor, the agent or fiduciary of the requestor [sic—should be respondent];

20. "Response" means the document transmitted by the respondent to the requestor within the time prescribed by [§ 1141.4];

21. "Subject parcel" means the specific real property identified in a notice transmitted to a respondent as provided by [§ 1141.3];

22. "Title" means the judicial or nonjudicial conclusion regarding either legal or equitable ownership of real property or an estate in real property located in the State of Oklahoma; and

23. "Title defect" means a deficiency, as measured or determined by reference to the statutes of the State of Oklahoma, cases decided by the courts of the State of Oklahoma or by reference to the Title Examination Standards published by the Real Property Section of the Oklahoma Bar Association, in the legal or equitable title of real property located in the State of Oklahoma.

§ 1141.3:

A. Any person or any entity having an interest or claiming an interest with respect to any parcel of real property who in good faith asserts that there is an instrument filed in the real property records of the county in which the real property, or some portion of the real property, is located and who would otherwise be required to file a quiet title action with respect to the parcel pursuant to the provisions of [12 O.S. § 1141], may use the procedures authorized by this act to attempt to remove a cloud or an apparent cloud on the title of the real property by requesting a respondent to prepare a curative instrument or to take corrective action.

B. The provisions of this act are permissive and shall not be required as a condition prece-

dent to the filing of a petition to quiet title pursuant to [12 O.S. § 1141].

C. If making a request pursuant to this act, the requestor shall send a notice to the respondent which shall include:

1. The specific identity of the person or entity requesting the respondent to execute or to execute and deliver a curative instrument or take other corrective action the purpose of which is to remove a cloud or an apparent cloud on the title of the subject parcel;

2. A specific identification of the conveyance, instrument or other document, by reference to:

a. the county or counties in which the instrument or document is filed for record,

b. the book and page number in which the instrument or other document is recorded,

c. the identity of the grantor or the person or entity subscribing the instrument, (if different than the identified grantor),

d. the identity of the grantee or grantees,

e. the legal description of the real property contained in the instrument,

f. the date the instrument was executed,

g. the date the instrument was filed for record, and

h. such other information as may be required in order for the respondent to know with reasonable certainty the exact instrument or instruments to which the requestor is referring;

3. The nature of the assertion by the requestor regarding the effect of the instrument or document as a cloud or an apparent cloud upon the title of the subject parcel; and

4. The nature of the corrective action sought by the requestor, including, but not limited to, the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.

D. The requestor shall prepare and send with the notice the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.

§ 1141.4:

A. The requestor shall prepare the notice as described in [§ 1141.3] and shall transmit the notice by certified mail to the person or entity identified in the notice as the respondent.

B. The respondent shall have a period of thirty (30) days from the receipt of the notice within which to respond to the notice and any request for the execution or delivery of a curative instrument or for corrective action.

C. A respondent may ask for clarification by the requestor or for further information prior to making either a negative response or an affirmative response. The respondent may communicate with the requestor within the period of time required for the respondent to make a response to the requestor, but any request made pursuant to this subsection shall not extend the time within which to respond.

D. The respondent may make a formal request of the requestor for clarification or for further information by certified mail if the formal request for clarification or additional information is received by the original requestor within the original period of time prescribed by subsection B of this section for a response by the respondent. If a respondent makes a formal request for clarification or for additional information, the original requestor shall have a period of twenty (20) days within which to transmit a clarification or additional information. The respondent shall then have a period of twenty (20) days from the date the clarification or additional information is received in order to provide a final response.

E. If a respondent declines to execute and deliver the curative instrument requested or take the corrective action requested, and the respondent communicates the refusal to the requestor, the requestor may pursue the remedies authorized by this section.

F. If the requestor properly transmits the notice by certified mail and the respondent does not claim the item as indicated by the records of the United States Post Office, the refusal to claim the item shall be treated as a refusal to respond to the request.

G. If a respondent executes and delivers or causes to be executed and delivered the curative instrument requested in the notice or takes the corrective action requested, the respondent shall not be liable for the damages specified in [§ 1141.5(A)] in a quiet title action notwithstanding that the respondent is named as a defendant in such an action.

§ 1141.5:

A. If a requestor prepares a notice pursuant to [§ 1141.3], and:

1. The respondent receives the notice and fails to respond, or

2. The respondent requests clarification or additional information and then subsequently refuses to execute and deliver a curative instrument or to take the corrective action identified in the notice, or

3. The respondent refuses to claim the notice, or

4. The respondent receives the notice and refuses to take the action requested in the notice, then in the event that the requestor files an action to quiet title to the subject parcel pursuant to [12 O.S. § 1141], and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice, the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the plaintiff in identifying the relevant instrument, preparing the notice to the respondent pursuant to [§ 1141.3], and the expenses of litigation directly related to obtaining judgment quieting title in the plaintiff with respect to the interest or apparent interest forming the basis of the action against the respondent, including costs and reasonable attorney fees.

In reviewing said provision we keep in mind the following important legal principles concerning interpretation of statutes. Of course, the primary goal of statutory interpretation is to ascertain and follow the Legislature's intention. *See Fulsom,* 2003 OK 96, at ¶ 7, 81 P.3d at 655; *see also TRW/Reda Pump v. Brewington,* 1992 OK 31, 829 P.2d 15, 20. "[T]he plain meaning of a statute's language is conclusive except in the rare case when literal construction produces a result demonstrably at odds with legislative intent." *Samman,* 2001 OK 71, at ¶ 13, 33 P.3d at 307, relying on *City of Tulsa v. Public Employees Relations Board,* 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220. A court is duty-bound to give effect to legislative acts, not amend, repeal or circumvent them. *City of Tulsa,* 1998 OK 92, at ¶ 18, 967 P.2d at 1221. When a court is called on to interpret a statute, the court has no authority to rewrite the enactment merely because it does not comport with the court's view of prudent public policy. *See id.* Also, the wisdom of choices made within the Legislature's law-making sphere are not our concern, because those choices—absent constitutional or other recognized infirmity—rightly lie within the legislative domain. *See Fulsom,* 2003 OK 96, at ¶ 14, 81 P.3d at 658.

¶ 14 Furthermore, *Fulsom* delineated the general rules concerning the recovery of attorney fees and interpretation of statutes argued to support an attorney fee allowance:

This Court stated the following in *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 16, 61 P.3d 234, 243, concerning the well-known American Rule as to the recovery of attorney fees in litigation:

Oklahoma follows the American Rule.... The Rule is generally that each litigant pays for their own legal representation and our courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery. Exceptions to the Rule are narrowly defined and carved out with great caution because it is understood liberality of attorney fee awards against the non-prevailing party has a chilling effect on our open access to courts guarantee. [Citations omitted.]

Oklahoma jurisprudence, thus, recognizes that attorney fee statutes are strictly applied because to do otherwise holds out the real possibility of chilling access to the courts. *Beard v. Richards,* 1991 OK 117, 820 P.2d 812, 816; *In re Adoption of K.M.S.,* 2000 OK CIV APP 25, ¶ 3, 997 P.2d 856, 857; *see Abbott v. Abbott,* 2002 OK CIV APP 6, ¶ 14, 38 P.3d 937, 941. For an award of attorney fees to be authorized under a particular statute the authorization must be found within the strict confines of the involved statute. *Beard v. Richards, supra,* 820 P.2d at 816. Further, if the involved attorney fee statute requires interpretation it may be read in context with other parts of the statute and in light of the law in effect at the time of its enactment. *See id.*

*Fulsom,* 2003 OK 96, at ¶ 8, 81 P.3d at 655.

¶ 15 As we read the plain and salient language of § 1141.5(A)(1)-(4), for a plaintiff to show themselves entitled to damages, including attorney fees and costs, it must be shown that a plaintiff obtained "a judgment" that "could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice", i.e., here, the *"ROAD EASEMENT"* instrument that accompanied the written statutory demand that plaintiffs, through their attorney, sought to have defendants execute. To us, the meaning of this language is clear and unambiguous, to wit: that plaintiffs must win, in a real sense, through the quiet title court proceeding that

---

B. If a defendant in the quiet title action who either failed to respond to a notice pursuant to [§ 1141.4] or who refused to execute and deliver a curative instrument or take corrective action identified in the notice prevails in the quiet title action, the defendant in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the defendant in responding to the notice from the requestor pursuant to [§ 1141.4], and the expenses of litigation directly related to obtaining judgment quieting title in the defendant or asserting an affirmative defense with respect to the interest or apparent interest forming the basis of the action against the defendant, including costs and reasonable attorney fees.

which they sought through their written demand. In the present situation, the plaintiffs obtained no such relief. The legal instrument they sought to have defendants execute to cure the problem concerning lack of definitive specification of an easement was one that would have given a road easement of more than double the width of the existing road that allowed ingress and egress access to the landlocked parcel. Put in elementary terms, the result sought to be accomplished through plaintiffs' curative instrument was substantially different from the result obtained through the November 2001 trial court Order, an Order that specified a twenty (20) foot road easement following the contours of the existent road. In sum, a plaintiff relying on § 1141.5(A)(1)-(4) to support a claim to its monetary recovery, including attorney fees and costs, must present to a defendant a curative instrument that actually conforms, except as to inconsequential or insignificant matters, to the ultimate relief granted to the plaintiff in the quiet title court proceeding. As we read § 1141.5(A)(1)-(4), plaintiffs here do not fall within its scope.[14]

¶ 16 Even if we assume there is some ambiguity or doubt associated with the language contained in § 1141.5(A)(1)-(4) as to when damages, including attorney fees and costs, are appropriately recoverable, a review of the entirety of the NMTPA convinces us the Legislature had no intent to allow such recovery in the circumstances revealed by the instant record. We are lead to such view based on the following well-recognized legal principles. Where a statute is ambiguous or its meaning uncertain, the provision should be given a reasonable construction, one that will avoid absurd consequences, if this can be done without violating legislative intent. *TRW/Reda Pump v. Brewington*, 829 P.2d at 20. Further, even an inept or incorrect choice of words in a legislative provision will not be applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment. *Id.*

¶ 17 The NMTPA sets forth detailed procedures to be followed where someone having an interest or claiming an interest in a parcel of real property and who believes there is some title defect or apparent cloud on the title to the real property, seeks to remedy same without having to institute a court action to quiet title. Subsection 1141.3(B) of the NMTPA expressly declares that the provisions of the NMTPA are permissive and are not required as a condition to the bringing of a quiet title action pursuant to § 1141. Two other subsections of the NMTPA are § 1141.3(C)(4) and § 1141.3(D), which provide:

C. If making a request pursuant to this act, the requestor shall send a notice to the respondent which shall include:

* * *

4. The nature of the corrective action sought by the requestor, including, but not limited to, **the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.**

D. The requestor shall prepare and send with the notice **the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.**

(emphasis added). The NMTPA defines requestor at § 1141.2(18) as "any person or entity transmitting a notice to a respondent pursuant to [§ 1141.3] or if the requestor engages the services of an agent or fiduciary to prepare the notice, the agent or fiduciary of the requestor[.]" Respondent is defined at § 1141.2(19) as "the person or entity to whom a notice is transmitted pursuant to [§ 1141.3] or, if the respondent engages the services of an agent or fiduciary to prepare a response to a requestor, the agent or fiduciary of the requestor [sic—should be respondent][.]" Here, of course, the requestors are

14. We note that nothing in the record in this appeal shows or indicates that the fifty (50) foot wide easement requested by plaintiffs was necessary to provide reasonable ingress and egress to the landlocked parcel. Further, no showing was made that the road built after defendants sold the parcel to their son in 1988, a road existent when plaintiffs both purchased the parcel in 1998 and later sold it in 2001, was somehow deficient in providing a necessary and reasonable passageway to and from the property.

the plaintiffs or their counsel, and respondents are the defendants.

¶ 18 As can be seen, both § 1141.3(C)(4) and § 1141.3(D), in clear and unmistakable language, require that the individual seeking another's execution of a curative instrument **must** send with the notice "the exact instrument or conveyance" that would be acceptable to cure the title problem identified and sought to be cured. We believe it is beyond question that the Legislature, by use of such specific terminology, read in conjunction with § 1141.5(A)(1)-(4), never intended the latter to support the recovery of damages, including attorney fees and costs, in a situation where the instrument sent to a respondent that is identified as acceptable to the requestor, asks for well beyond what is necessary to cure the problem and, consequently the respondent refuses to sign it, and then in a subsequent court action involving the matter the defect is cured by a judgment awarding something significantly less than requested. In our view, giving such a meaning to the legislative enactment is unwarranted and is at odds with a sensible and reasonable interpretation viewing the matter in light of the whole of the NMTPA and its general purpose, to provide a mechanism geared toward preventing unnecessary litigation in the form of a quiet title suit.

¶ 19 To conclude otherwise would essentially countenance the absurd possibility that, as applicable here, plaintiffs could have requested defendants to execute an ingress/egress road easement encompassing every square foot of defendants' property (which defendants would presumably have refused, as they refused to execute plaintiffs'

fifty (50) foot *"ROAD EASEMENT"*), but via the subsequent quiet title proceeding plaintiffs would be entitled to recover damages, including the expenses incurred by them in preparing the notice to the respondent pursuant to § 1141.3 and the attorney fees and costs associated with the court action, even though the trial court rejects the curative instrument plaintiffs identified as acceptable to forego litigation. It is hard for us to envision a more absurd result, a result that we believe does not follow from any language in the NMTPA and, as applicable here, that does not comport with the real and obvious specific purpose of the pertinent language contained in § 1141.5(A)(4) as to the recovery of damages, including attorney fees and costs, which is to allow a plaintiff to recover thereunder if a defendant refuses to execute a curative instrument that is actually necessary to cure the title problem and that, thereafter, said instrument, except as to inconsequential or insignificant matters, is ultimately determined by a trial court in a quiet title suit as such necessary relief.[15]

## PART IV. CONCLUSION.

¶ 20 This cause requires determination of the meaning of a part of the NMTPA concerning the appropriateness of recovery of damages, including attorney fees and costs, in a quiet title action brought in regard to a road easement. The record in the matter shows that plaintiffs failed to bring themselves within the terms of § 1141.5(A), the controlling statutory provision. The trial court correctly granted summary judgment to defendants as to plaintiffs' claim to such recovery and the trial court did not err in denying plaintiffs' motions for new trial and

---

15. We note that the instant matter is not controlled by *White v. Grace*, 1997 OK 143, 950 P.2d 837, which involved application of certain attorney fee language contained in § 1141 [the quiet title statute referenced in § 1141.5(A)(4) of the NMTPA] prior to the legislative deletion of said attorney fee language in 2000, a deletion accomplished by the Legislature in the same legislation culminating in the NMTPA [see 2000 Okla. Sess. Laws, Ch. 147, §§ 1–6], a new statutory scheme at that time. *See also Apache Corp. v. State ex rel. Com'rs of Land Office*, 1992 OK CIV APP 67, 845 P.2d 1281; *Harlow Corp. v. Bryant Exploration and Production Co., Inc.*, 1991 OK CIV APP 80, 816 P.2d 1154; *Circle F Ranch Co. v. Strehlau*, 1989 OK CIV APP 39, 776 P.2d 855. In *White*, as in the other three cases cited, the attorney fee provision under consideration was a part of § 1141, contained therein either as a separate standing second paragraph or as subsection (B) thereto. The language, prior to its deletion in 2000, was as follows: "[i]f a written request for the correction of a title defect has been refused without reasonable cause and an action is brought pursuant to the provisions of this section, the court may award reasonable attorneys fees to the prevailing party." See 12 O.S. Supp. 1983, § 1141; 12 O.S.1991, § 1141; 12 O.S. Supp.1997, § 1141; 12 O.S. Supp.1998, § 1141; and 2000 Okla. Sess. Laws, Ch. 147, § 6.

for an award of damages, costs and attorney fees, as the record shows they are not entitled to such relief under § 1141.5(A). Consequently, the COCA erred in reversing and remanding for trial.

¶ 21 For the reasons specified above, the opinion of the Court of Civil Appeals is **VACATED** and the trial court Orders denying plaintiffs' motions for new trial and for an award of damages, costs and attorney fees are **AFFIRMED.**

¶ 22 WATT, C.J., LAVENDER, HARGRAVE, KAUGER, WINCHESTER, EDMONDSON, TAYLOR and COLBERT, JJ., concur.