OSCN Found Document:KINSLOW FAMILY LIMITED PARTNERSHIP v. GBR CATTLE COMPANY, LLC

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 KINSLOW FAMILY LIMITED PARTNERSHIP v. GBR CATTLE COMPANY, LLC
2015 OK CIV APP 47
350 P.3d 174
Case Number: 112042
Decided: 04/24/2015
Mandate Issued: 05/20/2015
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2015 OK CIV APP 47, 350 P.3d 174

 

KINSLOW FAMILY LIMITED PARTNERSHIP, 
Plaintiff/Appellee,
v.
GBR CATTLE COMPANY, LLC, WILLIAM SANDERS and AMY L. 
SANDERS, Defendants/Appellants,
and
GBR CATTLE COMPANY, LLC, BOBBY E. 
WISHON, SHIRLEY R. WISHON, WILLIAM LLOYD BERRY, as Co-Trustee of THE PAMELA 
HARPER BERRY REVOCABLE TRUST DATED JUNE 28, 1999, and PAMELA HARPER BERRY, as 
Co-Trustee of THE PAMELA HARPER BERRY REVOCABLE TRUST DATED JUNE 28, 1999, 
Defendants.

APPEAL FROM THE DISTRICT COURT OF SEMINOLE COUNTY, OKLAHOMA
HONORABLE GEORGE W. BUTNER, TRIAL JUDGE

REVERSED

James T. Stuart, George Wright, STUART CLOVER DURAN THOMAS & VORNDRAN, 
Shawnee, Oklahoma, and Melvin R. McVay, Jr., Candace W. Lisle, PHILLIPS MURRAH, 
P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee
Gerald E. Kelley, 
GERALD E. KELLEY LLC, Oklahoma City, Oklahoma, for 
Defendants/Appellants


JANE P. WISEMAN, JUDGE:
¶1 GBR Cattle Company, LLC, William Sanders, and Amy L. Sanders 
(collectively, Defendants) appeal an order of the trial court awarding attorney 
fees to the Kinslow Family Limited Partnership (Kinslow). The issue presented is 
whether the trial court erred as a matter of law in awarding attorney fees to 
Kinslow. After review of pertinent law and the record on appeal, we conclude the 
decision was in error and pursuant to 12 O.S.2011 § 1141.5, reverse the 
award of attorney fees to Kinslow.
FACTS AND PROCEDURAL BACKGROUND
¶2 Kinslow filed a petition on July 8, 2010, seeking to quiet title to 
certain real property in Seminole and Okfuskee Counties in Oklahoma. This Court 
on March 29, 2013, issued its Opinion in Case No. 110,560 affirming the trial 
court's entry of summary judgment in favor of Kinslow. In that appeal, we 
summarized the facts and procedural history as follows:

 
 The real property at issue in this case is located in Seminole and 
 Okfuskee Counties. In 1994, Bobby E. Wishon and Shirley R. Wishon (the 
 Wishons) conveyed the property to GBR Cattle Company, L.L.C. (Former GBR). 
 On July 17, 1997, Former GBR conveyed the property back to the Wishons. The 
 Wishons and William Sanders (Sanders) owned the Former GBR, which eventually 
 ceased operation and was terminated/ cancelled by the Secretary of State. On 
 June 2, 2006, the Wishons conveyed the property to the Berry Trust. On 
 October 17, 2006, the Berry Trust conveyed a portion of the property to 
 Kinslow.
 Sanders later formed GBR Cattle Company, LLC (New GBR) and in December 
 2008, filed a stray deed purporting to convey a 48% interest in the property 
 from New GBR to Sanders. In February 2010, Sanders filed another stray deed 
 conveying the same interest to him and Amy L. Sanders.
 In July 2010, Kinslow filed the present quiet title action against New 
 GBR and Sanders asking the trial court to quiet title in the subject 
 property in its favor. New GBR and Sanders answered and counterclaimed 
 asserting title to the property and claiming the 1997 deed was executed 
 without proper authority. They also asserted adverse possession.
 Kinslow amended the petition to join the Wishons, Former GBR, and the 
 Berry Trust as defendants seeking relief for "sums which it is required to 
 pay to defend its title to the Property." It also sought to recover the 
 price paid for the property along with any improvements it made to the 
 property.
 Kinslow filed a motion for summary judgment asserting the following 
 arguments: (1) "The Wishon deed has been filed of record for more than five 
 years and is therefore deemed valid," (2) "Bobby Wishon had the authority to 
 convey the subject property to the Wishons on behalf of the Former GBR," (3) 
 "Kinslow is a bona fide purchaser for value of the subject property," (4) 
 "Defendant Sanders is estopped from asserting that the Wishon Deed is void," 
 and (5) "Defendants' claim based on adverse possession should be 
denied."
 The Berry Trust likewise filed a motion for summary judgment adopting the 
 arguments contained in Kinslow's motion for summary judgment and also 
 arguing the "Berry Trust is a bona fide purchaser for value of the subject 
 property."
 In response to these motions for summary judgment, New GBR and Sanders 
 argued (1) questions of fact exist, (2) "the subject property was owned by 
 GBR, a capital contribution by Wishon, and the purported conveyance of same 
 by GBR was never authorized," (3) "the Berry Trust is not a bona fide 
 purchaser," and (4) "Kinslow is not a bona fide purchaser for value of the 
 subject property, but a party on notice of the claims of 
 Sanders."
¶3 As further recited in our Opinion, the lower court concluded:

 
 "[A]ny alleged defects in the Wishon Deed were cured, and the Wishon Deed 
 was rendered valid by operation of 16 O.S. § 27a, once it had been 
 filed of record in the offices of the county clerks in the proper counties 
 for a period of five (5) years." It further found the record contains "no 
 evidence that Sanders ever recorded any instrument which was in conflict 
 with the Wishon Deed until December, 2008, more than five (5) years after 
 the Wishon Deed had been recorded in both Seminole and Okfuskee 
 Counties."
¶4 We noted that the trial court explained "there is no evidence 'that 
Sanders filed any action to recover the alleged wrongful distribution of 
property of the Former GBR to Wishon by virtue of the Wishon Deed, within three 
(3) years from the July 17, 1997[,] conveyance pursuant to 18 O.S. § 2031.'" The trial court 
also "found that Berry Trust was a bona fide purchaser for value and that 
Kinslow was entitled to bona fide purchaser protection 'as the grantee of a bona 
fide purchaser for value.'" The trial court held:

 
 Sanders, in a previous case with the Wishons over the operation and 
 dissolution of Former GBR, had asserted to the court that the 1997 division 
 of the land owned by Former GBR occurred by the agreement of both the 
 Wishons and Sanders, who were the only members of the LLC being dissolved. 
 Based on these representations regarding the validity of the deed and 
 similar ones made in yet another previous case, the trial court held that 
 Sanders was estopped from asserting the 1997 deed was "void, defective, or 
 invalid." The trial court also concluded that Sanders' "claim of title to 
 the Subject Property based upon adverse possession is not supported by the 
 record," there being no evidence to show the Sanders Defendants had been in 
 "actual, open, notorious, exclusive, continuous, and hostile possession of 
 the Subject Property for the full prescriptive period of fifteen (15) years 
 prior to the filing of their Counterclaims . . . 
."
¶5 The trial court quieted title "to the Kinslow Property in Kinslow" and 
quieted title "to the Berry Trust Property in the Berry Trust." It also declared 
"Stray Deed #1, and Stray Deed #2, to be sham deeds, cancel[led] each [of] them, 
and decree[d] each said deed to be a nullity, void, and of no further legal 
effect of any nature whatsoever."
¶6 On April 4, 2012, Kinslow filed a motion for attorney fees, costs, and 
expenses pursuant to 12 O.S. § 
1141.5 seeking $41,831.56 in attorney fees and $970.19 in costs and 
expenses. Kinslow claims that its counsel notified William Sanders (Sanders) on 
May 20, 2010, that Stray Deed # 1 constituted a cloud on Kinslow's title and 
demanded a quitclaim deed. In response, Sanders sent a letter to Kinslow's 
counsel asking for clarification and information pursuant to 12 O.S.2011 § 1141.4. Counsel for 
Kinslow responded with another letter on June 22, 2010, again demanding that 
Sanders execute a quitclaim deed to remove the cloud on Kinslow's title to the 
Property. Sanders did not respond to this letter, and Kinslow filed suit to 
quiet title to the Property. Kinslow later filed an amended petition naming 
further defendants. Kinslow requested attorney fees pursuant to 12 O.S. § 1141.5, which is part of 
the Nonjudicial Marketable Title Procedures Act (NMTPA).
¶7 Defendants filed an objection contending that Kinslow is not entitled to 
attorney fees and costs because it did not comply with the NMTPA. In response, 
Kinslow asserted it substantially complied with the Act.
¶8 On July 12, 2012, the trial court filed an order granting Kinslow's 
attorney fee motion finding that Kinslow's substantial compliance with the NMTPA 
entitled it to attorney fees, costs, and expenses pursuant to 12 O.S. § 1141.5. The trial court 
awarded attorney fees of $41,831.66 and costs and expenses of $970.19 to 
Phillips Murrah, PC, and attorney fees and costs of $8,207.63 to the law firm of 
Stuart, Clover, Duran, Thomas, & Vorndan.[1]
¶9 Defendants filed a motion to vacate in part the award of fees, costs, and 
expenses, or in the alternative, a motion for new trial, claiming that the order 
"should be partially vacated with respect to the amount of attorney's fees, 
costs and expenses" because there was an error by the trial court in determining 
the amount of fees, costs, and expenses. Defendants asserted the court entered 
an agreed order on May 9, 2012, in which the only issue to be decided at a 
hearing scheduled for June 13, 2012, was whether Kinslow was entitled to 
attorney fees and "'the issue of the amounts to be awarded [was] to be 
determined at a later hearing, if necessary." Defendants claimed the trial 
court's July 12, 2012, order determined not only entitlement to attorney fees 
but also the amount of fees, thus depriving them of the opportunity to present 
evidence regarding the amount of fees, costs, and expenses.
¶10 The trial court vacated the award of attorney fees, costs, and expenses 
as to the amounts awarded and set the matter for hearing which was held on June 
10, 2013. On July 8, 2013, the trial court filed an order finding that the 
hourly rates charged by Stuart, Clover, Duran, Thomas & Vorndan, LLP, were 
reasonable and that the amount of fees sought by Kinslow was reasonable. The 
trial court granted Kinslow's application and awarded $8,957.63 in attorney fees 
and $919.10 for expert witness expenses for Stuart, Clover, Duran, Thomas & 
Vorndan and ordered Defendants to pay these amounts. The trial court filed 
another order that day finding that the hourly rates charged by Phillips Murrah, 
PC, and the amount of fees sought by Kinslow were reasonable under Oklahoma law. 
The trial court granted Kinslow's motion and awarded Kinslow $52,812.81 in 
attorney fees and $2,122.09 in expenses and costs and ordered Defendants to pay 
these amounts.
¶11 Defendants appeal.
STANDARD OF REVIEW
¶12 The question of a party's entitlement to attorney fees is a question of 
law, which we review de novo. See Finnell v. Seismic, 2003 OK 35, ¶ 7, 67 P.3d 339. "The amount to be 
awarded as a fee for the services of a legal practitioner is a matter left to 
the discretion of the trial court and will not be disturbed absent an abuse of 
discretion." Id. ¶ 8.
ANALYSIS
¶13 Defendants assert the trial court erred in awarding attorney fees 
because Kinslow, having failed to meet the statutory requirements of 12 O.S.2011 § 1141.3, was not 
entitled to attorney fees pursuant to 12 O.S.2011 § 1141.5. Title 12 O.S.2011 § 1141.5, which allows 
attorney fee awards when a person or entity uses the NMTPA's alternative 
procedures to quiet title, provides:

 
 A. If a requestor prepares a notice pursuant to [12 O.S. § 1141.3] and:
 1. The respondent receives the notice and fails to respond, or
 2. The respondent requests clarification or additional information and 
 then subsequently refuses to execute and deliver a curative instrument or to 
 take the corrective action identified in the notice, or
 3. The respondent refuses to claim the notice, or
 4. The respondent receives the notice and refuses to take the action 
 requested in the notice, then in the event that the requestor files an 
 action to quiet title to the subject parcel pursuant to Section 1141 of 
 Title 12 of the Oklahoma Statutes, and the civil action results in a 
 judgment for the plaintiff which could have been accomplished through the 
 execution and delivery of a curative instrument or the taking of corrective 
 action identified in a notice, the plaintiff in the quiet title action, 
 in addition to any other requested relief, shall be entitled to recover 
 damages equal to the actual expenses incurred by the plaintiff in 
 identifying the relevant instrument, preparing the notice to the respondent 
 pursuant to Section 3 of this act, and the expenses of litigation directly 
 related to obtaining judgment quieting title in the plaintiff with respect 
 to the interest or apparent interest forming the basis of the action against 
 the respondent, including costs and reasonable attorney fees. 
 B. If a defendant in the quiet title action who either failed to respond 
 to a notice pursuant to Section 4 of this act or who refused to execute and 
 deliver a curative instrument or take corrective action identified in the 
 notice prevails in the quiet title action, the defendant in the quiet title 
 action, in addition to any other requested relief, shall be entitled to 
 recover damages equal to the actual expenses incurred by the defendant in 
 responding to the notice from the requestor pursuant to [12 O.S. § 1141.4] of this act, 
 and the expenses of litigation directly related to obtaining judgment 
 quieting title in the defendant or asserting an affirmative defense with 
 respect to the interest or apparent interest forming the basis of the action 
 against the defendant, including costs and reasonable attorney 
 fees.
12 O.S.2011 § 1141.5 
(emphasis added) (footnotes omitted).
¶14 Title 12 O.S.2011 § 
1141.3, which sets out "[p]rocedures alternative to quiet title action to 
remove cloud on title," provides:

 
 A. Any person or any entity having an interest or claiming an interest 
 with respect to any parcel of real property who in good faith asserts that 
 there is an instrument filed in the real property records of the county in 
 which the real property, or some portion of the real property, is located 
 and who would otherwise be required to file a quiet title action with 
 respect to the parcel pursuant to the provisions of Section 1141 of Title 12 
 of the Oklahoma Statutes, may use the procedures authorized by this act to 
 attempt to remove a cloud or an apparent cloud on the title of the real 
 property by requesting a respondent to prepare a curative instrument or to 
 take corrective action.
(Footnote omitted.)
¶15 According to § 1141.3, the NMTPA's provisions are permissive and a person 
or entity is not required to follow the procedures set out in the Act before 
filing a petition to quiet title. 12 
O.S.2011 § 1141.3(B). The requirements for the information that must be 
contained in a request are set out in 12 O.S.2011 § 1141.3(C):
If making a request pursuant to this act, the requestor shall send a notice 
to the respondent which shall include:

 
 1. The specific identity of the person or entity requesting the 
 respondent to execute or to execute and deliver a curative instrument or 
 take other corrective action the purpose of which is to remove a cloud or an 
 apparent cloud on the title of the subject parcel;
 2. A specific identification of the conveyance, instrument or other 
 document, by reference to:
 a. the county or counties in which the instrument or document is filed 
 for record,
b. the book and page number in which the instrument or other 
 document is recorded,
c. the identity of the grantor or the person or 
 entity subscribing the instrument, (if different than the identified 
 grantor),
d. the identity of the grantee or grantees,
e. the legal 
 description of the real property contained in the instrument,
f. the date 
 the instrument was executed,
g. the date the instrument was filed for 
 record, and
h. such other information as may be required in order for the 
 respondent to know with reasonable certainty the exact instrument or 
 instruments to which the requestor is referring;
 3. The nature of the assertion by the requestor regarding the effect of 
 the instrument or document as a cloud or an apparent cloud upon the title of 
 the subject parcel; and
 4. The nature of the corrective action sought by the requestor, 
 including, but not limited to, the exact instrument or conveyance which the 
 requestor would accept from the respondent as a curative instrument or other 
 corrective action.
Subsection D provides that the requestor must "prepare and send with the 
notice the exact instrument or conveyance which the requestor would accept from 
the respondent as a curative instrument or other corrective action." 12 O.S.2011 § 1141.3(D).
¶16 Section 1141.4 sets out the notice and timeline requirements of the 
NMTPA. Subsection A provides that the requestor must prepare the notice 
described in § 1141.3 and transmit that notice by certified mail to the 
respondent. 12 O.S.2011 § 
1141.4(A). The respondent must respond within 30 days. 12 O.S.2011 § 1141.4(B). The 
"respondent may ask for clarification by the requestor or for further 
information prior to making either a negative response or an affirmative 
response." 12 O.S.2011 § 
1141.4(C). Although "[t]he respondent may communicate with the requestor 
within the period of time required for the respondent to make a response to the 
requestor," such a request does not extend the time in which the respondent must 
respond. 12 O.S.2011 § 
1141.4(C). Alternatively, "[t]he respondent may make a formal request of the 
requestor for clarification or for further information by certified mail if the 
formal request for clarification or additional information is received by the 
original requestor within the original period of time prescribed by subsection B 
of this section for a response by the respondent." 12 O.S.2011 § 1141.4(D). If such a 
formal request is made, the requestor has 20 days to transmit the clarification 
or additional information. 12 
O.S.2011 § 1141.4(D). "The respondent shall then have a period of twenty 
(20) days from the date the clarification or additional information is received 
in order to provide a final response." 12 O.S.2011 § 1141.4(D). "If a 
respondent declines to execute and deliver the curative instrument requested or 
take the corrective action requested, and the respondent communicates the 
refusal to the requestor, the requestor may pursue the remedies authorized by 
this section." 12 O.S.2011 § 
1141.4(E).
¶17 Defendants contend that Kinslow failed to comply with all of the 
requirements of 12 O.S.2011 § 
1141.3. Kinslow asserts that it substantially complied with the requirements 
of the NMTPA and that its substantial compliance is sufficient to support the 
attorney fee award.
¶18 "Oklahoma follows the American Rule as to the recovery of attorney fees. 
The Rule is generally that each litigant pays for their own legal representation 
and our courts are without authority to assess attorney fees in the absence of a 
specific statute or contract allowing for their recovery." State ex rel. Tal 
v. City of Oklahoma City, 2002 
OK 97, ¶ 16, 61 P.3d 234. 
'"Oklahoma jurisprudence, thus, recognizes that attorney fee statutes are 
strictly applied because to do otherwise holds out the real possibility of 
chilling access to the courts."' Head v. McCracken, 2004 OK 84, ¶ 14, 102 P.3d 670 (quoting Fulsom v. 
Fulsom, 2003 OK 96, ¶ 8, 81 P.3d 652). '"For an award of 
attorney fees to be authorized under a particular statute the authorization must 
be found within the strict confines of the involved statute."' Id.
¶19 Kinslow's counsel, B.C. Harris, sent a letter to William Sanders on May 
20, 2010, in which he states, in part: "A quiet title action will be required 
unless you furnish to the Kinslow Family Limited Partnership, within thirty (30) 
days of the date of this letter, a quit claim deed wherein you quit claim all of 
your right, title and interest in the following described property, to wit: . . 
. ." A legal description then followed. Harris attached a quitclaim deed for 
Sanders to sign.
¶20 Within 30 days of the date on Harris's letter, Sanders by return letter 
to Harris dated June 15, 2010, requested clarification of two matters in 
Harris's letter:

 
 Please clarify the following:
 1. If you are requesting that I give my interest in the property listed 
 in your letter and quit claim deed to [Kinslow].
 2. If you are requesting that as manager of GBR Cattle Company, LLC 
 (GBR), I execute a deed of the interest in the property of GBR to 
 [Kinslow].
Additionally, Sanders's letter states:

 
 On January 2, 1994, GBR Cattle Company, LLC acquired title to the subject 
 property by warranty deed from Bobby E. Wishon and Shirley R. Wishon. . . . 
 Please provide information of whom, how and when [Kinslow] obtained title to 
 the subject property from GBR Cattle Company, LLC. Please provide documents 
 if able.
¶21 By letter dated June 22, 2010, James Stuart responded:

 
 We are attorneys acting as co-counsel with attorney B. C. Harris on 
 behalf of [Kinslow]. You have acknowledged receipt of Mr. Harris's letter 
 sent pursuant to 12 O.S. 
 1141.3, and failed to execute and return his enclosed Quit Claim Deed 
 within thirty (30) days. We have now been instructed to file suit in 
 District Court against you and [GBR], to quiet title to the subject 
 property, and we will seek to collect our attorney's fees and court costs 
 against you under Oklahoma law.
 In your letter you have requested some "clarification." In response, 
 please be advised that [Kinslow] does request and expects you and GBR to 
 execute and return the Quit Claim Deed to [Kinslow]. Mr. Harris was quite 
 clear in his letter as to the reasons why the Quit Claim Deed is necessary. 
 GBR previously owned and thereafter conveyed the subject property. Your 
 subsequent Warranty Deed from GBR, recorded on December 15, 2008 in both 
 Seminole and Okfuskee Counties, constitutes a cloud on [Kinslow's] 
 title.
Kinslow then filed this lawsuit on July 8, 2010.
¶22 Pursuant to 12 O.S.2011 § 
1141.4(B), Sanders was required to respond in 30 days to a letter if it was 
sent by certified mail. It is clear that Sanders received Harris's letter 
because he responded within 30 days with his letter dated June 15, 2010. As 
provided in the NMTPA, Sanders sought clarification "prior to making either a 
negative response or an affirmative response." 12 O.S.2011 § 1141.4(C). Sanders 
provided a number on his letter indicating his letter was sent certified mail 
and provided a copy of tracking information from the United States Postal 
Service.
¶23 Title 12 O.S.2011 § 
1141.4(D) states that "[t]he respondent may make a formal request of the 
requestor for clarification or for further information by certified mail if the 
formal request for clarification or additional information is received by the 
original requestor within the original period of time prescribed by subsection B 
of this section for a response by the respondent." It appears that Sanders 
complied with this requirement. Section 1141.4(D) further provides that, once 
Sanders requested clarification, Kinslow had 20 days to provide the 
clarification or additional information. As shown by the June 22, 2010, letter, 
Kinslow received the request for clarification. If Sanders received the June 22, 
2010, letter, Defendants would then have had 20 days from the date they received 
the clarification or additional information to provide a final response. 12 O.S.2011 § 1141.4(D).
¶24 It is unclear when or if Sanders received the June 22nd letter. What is 
clear, however, is that Kinslow did not allow Sanders 20 days to respond because 
Kinslow filed suit on July 8, 2010, less than 20 days after the June 22nd 
letter. Title 12 O.S.2011 § 
1141.4(E) provides, "If a respondent declines to execute and deliver the 
curative instrument requested or take the corrective action requested, and the 
respondent communicates the refusal to the requestor, the requestor may pursue 
the remedies authorized by this section." Kinslow has not shown that William 
Sanders, Amy Sanders, or GBR received the proper notice set out in § 1141.4 
after Sanders sent his letter seeking clarification. It is clear that Kinslow 
failed to fully comply with the requirements of § 1141.4. Attorney fees pursuant 
to § 1141.5 are mandated only if Kinslow as the requestor properly complies with 
the NMTPA. Kinslow has not shown that it did so because it failed to allow 
Defendants the statutory time specified by § 1141.4(D) to take corrective action 
or deliver the curative instrument before it filed suit. Kinslow in its answer 
brief characterizes the four-day shortfall as "immaterial and given the 
circumstances, an 'inconsequential' or 'insignificant' matter" that should not 
preclude recovery of attorney fees and costs by the prevailing party. We decline 
to undermine the statute's clear dictates by so holding.
¶25 Oklahoma law requires attorney fee statutes to be '"strictly applied 
because to do otherwise holds out the real possibility of chilling access to the 
courts."' Head v. McCracken, 2004 OK 84, ¶ 14, 102 P.3d 670 (quoting Fulsom v. 
Fulsom, 2003 OK 96, ¶ 8, 81 P.3d 652). When we strictly 
apply the attorney fee award provisions of the NMTPA to this case, we must 
conclude Kinslow failed to meet the statutory requirements entitling it to 
recover fees and costs. We must therefore reverse the award in favor of 
Kinslow.
CONCLUSION
¶26 The trial court erred in awarding attorney fees and costs to Kinslow 
pursuant to 12 O.S.2011 § 
1141.5. Accordingly, the trial court's order awarding attorney fees and 
costs is reversed.

¶27 REVERSED.

GOODMAN, V.C.J., and FISCHER, P.J., concur.

FOOTNOTES

[1] Both of 
these law firms represented Kinslow during this 
litigation.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2003 OK 35, 67 P.3d 339, FINNELL v. JEBCO SEISMIC
Discussed
 2003 OK 96, 81 P.3d 652, FULSOM v. FULSOM
Discussed at Length
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1141.3, Alternate Procedures to Quiet Title to Remove Apparent Cloud on Title
Discussed at Length
 12 O.S. 1141.4, Preparation and Transmittal of Notice - Response to Notice - Clarification of Notice
Discussed at Length
 12 O.S. 1141.5, Liability for Damages, Costs, and Attorney Fees
Discussed at Length
Title 16. Conveyances
 Cite
Name
Level

 16 O.S. 27a, Defective Acknowledgments
Cited
Title 18. Corporations
 Cite
Name
Level

 18 O.S. 2031, Wrongful Distribution - Liability - Recovery Action
Cited