OSCN Found Document:KINSLOW FAMILY LIMITED PARTNERSHIP v. GBR CATTLE COMPANY, LLC

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 KINSLOW FAMILY LIMITED PARTNERSHIP v. GBR CATTLE COMPANY, LLC
2015 OK CIV APP 47
Case Number: 112042
Decided: 04/24/2015
Mandate Issued: 05/20/2015
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2015 OK CIV APP 47, __ P.3d __

 

KINSLOW FAMILY LIMITED PARTNERSHIP, Plaintiff/Appellee,
v.
GBR CATTLE COMPANY, LLC, WILLIAM SANDERS and AMY L. SANDERS, Defendants/Appellants,
and
GBR CATTLE COMPANY, LLC, BOBBY E. WISHON, SHIRLEY R. WISHON, WILLIAM LLOYD BERRY, as Co-Trustee of THE PAMELA HARPER BERRY REVOCABLE TRUST DATED JUNE 28, 1999, and PAMELA HARPER BERRY, as Co-Trustee of THE PAMELA HARPER BERRY REVOCABLE TRUST DATED JUNE 28, 1999, Defendants.

APPEAL FROM THE DISTRICT COURT OF SEMINOLE COUNTY, OKLAHOMA

HONORABLE GEORGE W. BUTNER, TRIAL JUDGE

REVERSED

James T. Stuart, George Wright, STUART CLOVER DURAN THOMAS & VORNDRAN, Shawnee, Oklahoma, and Melvin R. McVay, Jr., Candace W. Lisle, PHILLIPS MURRAH, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee
Gerald E. Kelley, GERALD E. KELLEY LLC, Oklahoma City, Oklahoma, for Defendants/Appellants

JANE P. WISEMAN, JUDGE:

¶1 GBR Cattle Company, LLC, William Sanders, and Amy L. Sanders (collectively, Defendants) appeal an order of the trial court awarding attorney fees to the Kinslow Family Limited Partnership (Kinslow). The issue presented is whether the trial court erred as a matter of law in awarding attorney fees to Kinslow. After review of pertinent law and the record on appeal, we conclude the decision was in error and pursuant to 12 O.S.2011 § 1141.5, reverse the award of attorney fees to Kinslow.

FACTS AND PROCEDURAL BACKGROUND

¶2 Kinslow filed a petition on July 8, 2010, seeking to quiet title to certain real property in Seminole and Okfuskee Counties in Oklahoma. This Court on March 29, 2013, issued its Opinion in Case No. 110,560 affirming the trial court's entry of summary judgment in favor of Kinslow. In that appeal, we summarized the facts and procedural history as follows:

The real property at issue in this case is located in Seminole and Okfuskee Counties. In 1994, Bobby E. Wishon and Shirley R. Wishon (the Wishons) conveyed the property to GBR Cattle Company, L.L.C. (Former GBR). On July 17, 1997, Former GBR conveyed the property back to the Wishons. The Wishons and William Sanders (Sanders) owned the Former GBR, which eventually ceased operation and was terminated/ cancelled by the Secretary of State. On June 2, 2006, the Wishons conveyed the property to the Berry Trust. On October 17, 2006, the Berry Trust conveyed a portion of the property to Kinslow.

Sanders later formed GBR Cattle Company, LLC (New GBR) and in December 2008, filed a stray deed purporting to convey a 48% interest in the property from New GBR to Sanders. In February 2010, Sanders filed another stray deed conveying the same interest to him and Amy L. Sanders.

In July 2010, Kinslow filed the present quiet title action against New GBR and Sanders asking the trial court to quiet title in the subject property in its favor. New GBR and Sanders answered and counterclaimed asserting title to the property and claiming the 1997 deed was executed without proper authority. They also asserted adverse possession.

Kinslow amended the petition to join the Wishons, Former GBR, and the Berry Trust as defendants seeking relief for "sums which it is required to pay to defend its title to the Property." It also sought to recover the price paid for the property along with any improvements it made to the property.

Kinslow filed a motion for summary judgment asserting the following arguments: (1) "The Wishon deed has been filed of record for more than five years and is therefore deemed valid," (2) "Bobby Wishon had the authority to convey the subject property to the Wishons on behalf of the Former GBR," (3) "Kinslow is a bona fide purchaser for value of the subject property," (4) "Defendant Sanders is estopped from asserting that the Wishon Deed is void," and (5) "Defendants' claim based on adverse possession should be denied."

The Berry Trust likewise filed a motion for summary judgment adopting the arguments contained in Kinslow's motion for summary judgment and also arguing the "Berry Trust is a bona fide purchaser for value of the subject property."

In response to these motions for summary judgment, New GBR and Sanders argued (1) questions of fact exist, (2) "the subject property was owned by GBR, a capital contribution by Wishon, and the purported conveyance of same by GBR was never authorized," (3) "the Berry Trust is not a bona fide purchaser," and (4) "Kinslow is not a bona fide purchaser for value of the subject property, but a party on notice of the claims of Sanders."

¶3 As further recited in our Opinion, the lower court concluded:

"[A]ny alleged defects in the Wishon Deed were cured, and the Wishon Deed was rendered valid by operation of 16 O.S. § 27a, once it had been filed of record in the offices of the county clerks in the proper counties for a period of five (5) years." It further found the record contains "no evidence that Sanders ever recorded any instrument which was in conflict with the Wishon Deed until December, 2008, more than five (5) years after the Wishon Deed had been recorded in both Seminole and Okfuskee Counties."

¶4 We noted that the trial court explained "there is no evidence 'that Sanders filed any action to recover the alleged wrongful distribution of property of the Former GBR to Wishon by virtue of the Wishon Deed, within three (3) years from the July 17, 1997[,] conveyance pursuant to 18 O.S. § 2031.'" The trial court also "found that Berry Trust was a bona fide purchaser for value and that Kinslow was entitled to bona fide purchaser protection 'as the grantee of a bona fide purchaser for value.'" The trial court held:

Sanders, in a previous case with the Wishons over the operation and dissolution of Former GBR, had asserted to the court that the 1997 division of the land owned by Former GBR occurred by the agreement of both the Wishons and Sanders, who were the only members of the LLC being dissolved. Based on these representations regarding the validity of the deed and similar ones made in yet another previous case, the trial court held that Sanders was estopped from asserting the 1997 deed was "void, defective, or invalid." The trial court also concluded that Sanders' "claim of title to the Subject Property based upon adverse possession is not supported by the record," there being no evidence to show the Sanders Defendants had been in "actual, open, notorious, exclusive, continuous, and hostile possession of the Subject Property for the full prescriptive period of fifteen (15) years prior to the filing of their Counterclaims . . . ."

¶5 The trial court quieted title "to the Kinslow Property in Kinslow" and quieted title "to the Berry Trust Property in the Berry Trust." It also declared "Stray Deed #1, and Stray Deed #2, to be sham deeds, cancel[led] each [of] them, and decree[d] each said deed to be a nullity, void, and of no further legal effect of any nature whatsoever."

¶6 On April 4, 2012, Kinslow filed a motion for attorney fees, costs, and expenses pursuant to 12 O.S. § 1141.5 seeking $41,831.56 in attorney fees and $970.19 in costs and expenses. Kinslow claims that its counsel notified William Sanders (Sanders) on May 20, 2010, that Stray Deed # 1 constituted a cloud on Kinslow's title and demanded a quitclaim deed. In response, Sanders sent a letter to Kinslow's counsel asking for clarification and information pursuant to 12 O.S.2011 § 1141.4. Counsel for Kinslow responded with another letter on June 22, 2010, again demanding that Sanders execute a quitclaim deed to remove the cloud on Kinslow's title to the Property. Sanders did not respond to this letter, and Kinslow filed suit to quiet title to the Property. Kinslow later filed an amended petition naming further defendants. Kinslow requested attorney fees pursuant to 12 O.S. § 1141.5, which is part of the Nonjudicial Marketable Title Procedures Act (NMTPA).

¶7 Defendants filed an objection contending that Kinslow is not entitled to attorney fees and costs because it did not comply with the NMTPA. In response, Kinslow asserted it substantially complied with the Act.

¶8 On July 12, 2012, the trial court filed an order granting Kinslow's attorney fee motion finding that Kinslow's substantial compliance with the NMTPA entitled it to attorney fees, costs, and expenses pursuant to 12 O.S. § 1141.5. The trial court awarded attorney fees of $41,831.66 and costs and expenses of $970.19 to Phillips Murrah, PC, and attorney fees and costs of $8,207.63 to the law firm of Stuart, Clover, Duran, Thomas, & Vorndan.[1]

¶9 Defendants filed a motion to vacate in part the award of fees, costs, and expenses, or in the alternative, a motion for new trial, claiming that the order "should be partially vacated with respect to the amount of attorney's fees, costs and expenses" because there was an error by the trial court in determining the amount of fees, costs, and expenses. Defendants asserted the court entered an agreed order on May 9, 2012, in which the only issue to be decided at a hearing scheduled for June 13, 2012, was whether Kinslow was entitled to attorney fees and "'the issue of the amounts to be awarded [was] to be determined at a later hearing, if necessary." Defendants claimed the trial court's July 12, 2012, order determined not only entitlement to attorney fees but also the amount of fees, thus depriving them of the opportunity to present evidence regarding the amount of fees, costs, and expenses.

¶10 The trial court vacated the award of attorney fees, costs, and expenses as to the amounts awarded and set the matter for hearing which was held on June 10, 2013. On July 8, 2013, the trial court filed an order finding that the hourly rates charged by Stuart, Clover, Duran, Thomas & Vorndan, LLP, were reasonable and that the amount of fees sought by Kinslow was reasonable. The trial court granted Kinslow's application and awarded $8,957.63 in attorney fees and $919.10 for expert witness expenses for Stuart, Clover, Duran, Thomas & Vorndan and ordered Defendants to pay these amounts. The trial court filed another order that day finding that the hourly rates charged by Phillips Murrah, PC, and the amount of fees sought by Kinslow were reasonable under Oklahoma law. The trial court granted Kinslow's motion and awarded Kinslow $52,812.81 in attorney fees and $2,122.09 in expenses and costs and ordered Defendants to pay these amounts.

¶11 Defendants appeal.

STANDARD OF REVIEW

¶12 The question of a party's entitlement to attorney fees is a question of law, which we review de novo. See Finnell v. Seismic, 2003 OK 35, ¶ 7, 67 P.3d 339. "The amount to be awarded as a fee for the services of a legal practitioner is a matter left to the discretion of the trial court and will not be disturbed absent an abuse of discretion." Id. ¶ 8.

ANALYSIS

¶13 Defendants assert the trial court erred in awarding attorney fees because Kinslow, having failed to meet the statutory requirements of 12 O.S.2011 § 1141.3, was not entitled to attorney fees pursuant to 12 O.S.2011 § 1141.5. Title 12 O.S.2011 § 1141.5, which allows attorney fee awards when a person or entity uses the NMTPA's alternative procedures to quiet title, provides:

A. If a requestor prepares a notice pursuant to [12 O.S. § 1141.3] and:

1. The respondent receives the notice and fails to respond, or

2. The respondent requests clarification or additional information and then subsequently refuses to execute and deliver a curative instrument or to take the corrective action identified in the notice, or

3. The respondent refuses to claim the notice, or

4. The respondent receives the notice and refuses to take the action requested in the notice, then in the event that the requestor files an action to quiet title to the subject parcel pursuant to Section 1141 of Title 12 of the Oklahoma Statutes, and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice, the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the plaintiff in identifying the relevant instrument, preparing the notice to the respondent pursuant to Section 3 of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the plaintiff with respect to the interest or apparent interest forming the basis of the action against the respondent, including costs and reasonable attorney fees. 

B. If a defendant in the quiet title action who either failed to respond to a notice pursuant to Section 4 of this act or who refused to execute and deliver a curative instrument or take corrective action identified in the notice prevails in the quiet title action, the defendant in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the defendant in responding to the notice from the requestor pursuant to [12 O.S. § 1141.4] of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the defendant or asserting an affirmative defense with respect to the interest or apparent interest forming the basis of the action against the defendant, including costs and reasonable attorney fees.

12 O.S.2011 § 1141.5 (emphasis added) (footnotes omitted).

¶14 Title 12 O.S.2011 § 1141.3, which sets out "[p]rocedures alternative to quiet title action to remove cloud on title," provides:

A. Any person or any entity having an interest or claiming an interest with respect to any parcel of real property who in good faith asserts that there is an instrument filed in the real property records of the county in which the real property, or some portion of the real property, is located and who would otherwise be required to file a quiet title action with respect to the parcel pursuant to the provisions of Section 1141 of Title 12 of the Oklahoma Statutes, may use the procedures authorized by this act to attempt to remove a cloud or an apparent cloud on the title of the real property by requesting a respondent to prepare a curative instrument or to take corrective action.

(Footnote omitted.)

¶15 According to § 1141.3, the NMTPA's provisions are permissive and a person or entity is not required to follow the procedures set out in the Act before filing a petition to quiet title. 12 O.S.2011 § 1141.3(B). The requirements for the information that must be contained in a request are set out in 12 O.S.2011 § 1141.3(C):

If making a request pursuant to this act, the requestor shall send a notice to the respondent which shall include:

1. The specific identity of the person or entity requesting the respondent to execute or to execute and deliver a curative instrument or take other corrective action the purpose of which is to remove a cloud or an apparent cloud on the title of the subject parcel;

2. A specific identification of the conveyance, instrument or other document, by reference to:

a. the county or counties in which the instrument or document is filed for record,
b. the book and page number in which the instrument or other document is recorded,
c. the identity of the grantor or the person or entity subscribing the instrument, (if different than the identified grantor),
d. the identity of the grantee or grantees,
e. the legal description of the real property contained in the instrument,
f. the date the instrument was executed,
g. the date the instrument was filed for record, and
h. such other information as may be required in order for the respondent to know with reasonable certainty the exact instrument or instruments to which the requestor is referring;

3. The nature of the assertion by the requestor regarding the effect of the instrument or document as a cloud or an apparent cloud upon the title of the subject parcel; and

4. The nature of the corrective action sought by the requestor, including, but not limited to, the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.

Subsection D provides that the requestor must "prepare and send with the notice the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action." 12 O.S.2011 § 1141.3(D).

¶16 Section 1141.4 sets out the notice and timeline requirements of the NMTPA. Subsection A provides that the requestor must prepare the notice described in § 1141.3 and transmit that notice by certified mail to the respondent. 12 O.S.2011 § 1141.4(A). The respondent must respond within 30 days. 12 O.S.2011 § 1141.4(B). The "respondent may ask for clarification by the requestor or for further information prior to making either a negative response or an affirmative response." 12 O.S.2011 § 1141.4(C). Although "[t]he respondent may communicate with the requestor within the period of time required for the respondent to make a response to the requestor," such a request does not extend the time in which the respondent must respond. 12 O.S.2011 § 1141.4(C). Alternatively, "[t]he respondent may make a formal request of the requestor for clarification or for further information by certified mail if the formal request for clarification or additional information is received by the original requestor within the original period of time prescribed by subsection B of this section for a response by the respondent." 12 O.S.2011 § 1141.4(D). If such a formal request is made, the requestor has 20 days to transmit the clarification or additional information. 12 O.S.2011 § 1141.4(D). "The respondent shall then have a period of twenty (20) days from the date the clarification or additional information is received in order to provide a final response." 12 O.S.2011 § 1141.4(D). "If a respondent declines to execute and deliver the curative instrument requested or take the corrective action requested, and the respondent communicates the refusal to the requestor, the requestor may pursue the remedies authorized by this section." 12 O.S.2011 § 1141.4(E).

¶17 Defendants contend that Kinslow failed to comply with all of the requirements of 12 O.S.2011 § 1141.3. Kinslow asserts that it substantially complied with the requirements of the NMTPA and that its substantial compliance is sufficient to support the attorney fee award.

¶18 "Oklahoma follows the American Rule as to the recovery of attorney fees. The Rule is generally that each litigant pays for their own legal representation and our courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery." State ex rel. Tal v. City of Oklahoma City, 2002 OK 97, ¶ 16, 61 P.3d 234. '"Oklahoma jurisprudence, thus, recognizes that attorney fee statutes are strictly applied because to do otherwise holds out the real possibility of chilling access to the courts."' Head v. McCracken, 2004 OK 84, ¶ 14, 102 P.3d 670 (quoting Fulsom v. Fulsom, 2003 OK 96, ¶ 8, 81 P.3d 652). '"For an award of attorney fees to be authorized under a particular statute the authorization must be found within the strict confines of the involved statute."' Id.

¶19 Kinslow's counsel, B.C. Harris, sent a letter to William Sanders on May 20, 2010, in which he states, in part: "A quiet title action will be required unless you furnish to the Kinslow Family Limited Partnership, within thirty (30) days of the date of this letter, a quit claim deed wherein you quit claim all of your right, title and interest in the following described property, to wit: . . . ." A legal description then followed. Harris attached a quitclaim deed for Sanders to sign.

¶20 Within 30 days of the date on Harris's letter, Sanders by return letter to Harris dated June 15, 2010, requested clarification of two matters in Harris's letter:

Please clarify the following:

1. If you are requesting that I give my interest in the property listed in your letter and quit claim deed to [Kinslow].

2. If you are requesting that as manager of GBR Cattle Company, LLC (GBR), I execute a deed of the interest in the property of GBR to [Kinslow].

Additionally, Sanders's letter states:

On January 2, 1994, GBR Cattle Company, LLC acquired title to the subject property by warranty deed from Bobby E. Wishon and Shirley R. Wishon. . . . Please provide information of whom, how and when [Kinslow] obtained title to the subject property from GBR Cattle Company, LLC. Please provide documents if able.

¶21 By letter dated June 22, 2010, James Stuart responded:

We are attorneys acting as co-counsel with attorney B. C. Harris on behalf of [Kinslow]. You have acknowledged receipt of Mr. Harris's letter sent pursuant to 12 O.S. 1141.3, and failed to execute and return his enclosed Quit Claim Deed within thirty (30) days. We have now been instructed to file suit in District Court against you and [GBR], to quiet title to the subject property, and we will seek to collect our attorney's fees and court costs against you under Oklahoma law.

In your letter you have requested some "clarification." In response, please be advised that [Kinslow] does request and expects you and GBR to execute and return the Quit Claim Deed to [Kinslow]. Mr. Harris was quite clear in his letter as to the reasons why the Quit Claim Deed is necessary. GBR previously owned and thereafter conveyed the subject property. Your subsequent Warranty Deed from GBR, recorded on December 15, 2008 in both Seminole and Okfuskee Counties, constitutes a cloud on [Kinslow's] title.

Kinslow then filed this lawsuit on July 8, 2010.

¶22 Pursuant to 12 O.S.2011 § 1141.4(B), Sanders was required to respond in 30 days to a letter if it was sent by certified mail. It is clear that Sanders received Harris's letter because he responded within 30 days with his letter dated June 15, 2010. As provided in the NMTPA, Sanders sought clarification "prior to making either a negative response or an affirmative response." 12 O.S.2011 § 1141.4(C). Sanders provided a number on his letter indicating his letter was sent certified mail and provided a copy of tracking information from the United States Postal Service.

¶23 Title 12 O.S.2011 § 1141.4(D) states that "[t]he respondent may make a formal request of the requestor for clarification or for further information by certified mail if the formal request for clarification or additional information is received by the original requestor within the original period of time prescribed by subsection B of this section for a response by the respondent." It appears that Sanders complied with this requirement. Section 1141.4(D) further provides that, once Sanders requested clarification, Kinslow had 20 days to provide the clarification or additional information. As shown by the June 22, 2010, letter, Kinslow received the request for clarification. If Sanders received the June 22, 2010, letter, Defendants would then have had 20 days from the date they received the clarification or additional information to provide a final response. 12 O.S.2011 § 1141.4(D).

¶24 It is unclear when or if Sanders received the June 22nd letter. What is clear, however, is that Kinslow did not allow Sanders 20 days to respond because Kinslow filed suit on July 8, 2010, less than 20 days after the June 22nd letter. Title 12 O.S.2011 § 1141.4(E) provides, "If a respondent declines to execute and deliver the curative instrument requested or take the corrective action requested, and the respondent communicates the refusal to the requestor, the requestor may pursue the remedies authorized by this section." Kinslow has not shown that William Sanders, Amy Sanders, or GBR received the proper notice set out in § 1141.4 after Sanders sent his letter seeking clarification. It is clear that Kinslow failed to fully comply with the requirements of § 1141.4. Attorney fees pursuant to § 1141.5 are mandated only if Kinslow as the requestor properly complies with the NMTPA. Kinslow has not shown that it did so because it failed to allow Defendants the statutory time specified by § 1141.4(D) to take corrective action or deliver the curative instrument before it filed suit. Kinslow in its answer brief characterizes the four-day shortfall as "immaterial and given the circumstances, an 'inconsequential' or 'insignificant' matter" that should not preclude recovery of attorney fees and costs by the prevailing party. We decline to undermine the statute's clear dictates by so holding.

¶25 Oklahoma law requires attorney fee statutes to be '"strictly applied because to do otherwise holds out the real possibility of chilling access to the courts."' Head v. McCracken, 2004 OK 84, ¶ 14, 102 P.3d 670 (quoting Fulsom v. Fulsom, 2003 OK 96, ¶ 8, 81 P.3d 652). When we strictly apply the attorney fee award provisions of the NMTPA to this case, we must conclude Kinslow failed to meet the statutory requirements entitling it to recover fees and costs. We must therefore reverse the award in favor of Kinslow.

CONCLUSION

¶26 The trial court erred in awarding attorney fees and costs to Kinslow pursuant to 12 O.S.2011 § 1141.5. Accordingly, the trial court's order awarding attorney fees and costs is reversed.

¶27 REVERSED.

GOODMAN, V.C.J., and FISCHER, P.J., concur.

FOOTNOTES

[1] Both of these law firms represented Kinslow during this litigation.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2003 OK 35, 67 P.3d 339, FINNELL v. JEBCO SEISMIC
Discussed
 2003 OK 96, 81 P.3d 652, FULSOM v. FULSOM
Discussed at Length
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1141.3, Alternate Procedures to Quiet Title to Remove Apparent Cloud on Title
Discussed at Length
 12 O.S. 1141.4, Preparation and Transmittal of Notice - Response to Notice - Clarification of Notice
Discussed at Length
 12 O.S. 1141.5, Liability for Damages, Costs, and Attorney Fees
Discussed at Length
Title 16. Conveyances
 Cite
Name
Level

 16 O.S. 27a, Defective Acknowledgments
Cited
Title 18. Corporations
 Cite
Name
Level

 18 O.S. 2031, Wrongful Distribution - Liability - Recovery Action
Cited